UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD KEEFE, | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| JAMES SIMONS and | ) Case No. 13-cv-00931 |
| QUILTER'S RULE INTERNATIONAL, LLC, | ) ) Judge John W. Darrah |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Keefe, filed a multi-count Complaint against Defendants, James Simons and Quilter's Rule International, LLC ("Quilter's Rule"), on February 5, 2013, alleging breach of contract, unjust enrichment, conversion, fraud, and financial exploitation and elder abuse under state law, and violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act. Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, to Dismiss for Improper Venue or, in the alternative, to Transfer Venue to the United States District Court for the Eastern District of Wisconsin. The Motion has been fully briefed.

### BACKGROUND

A reading of the Complaint supports the following summary of the alleged conduct of the parties.[1] Fifteen years ago, Plaintiff met Defendant James Simons in Wilmette, Illinois, at a St. Patrick's Day Party. (Compl. ¶ 16.) At this party, Plaintiff and Simons entered into an oral contract whereby Plaintiff would invest $150,000.00 in a start-up company that would later

---

[1] Defendants did not file a formal answer to Plaintiff's Complaint, choosing instead to file the motion at issue on March 20, 2013.

become Quilter's Rule, a limited liability company located in Waterford, Wisconsin. (Id. ¶¶ 13-18, 24.) Simons is the majority shareholder of Quilter's Rule, owning 62.9% of the company. (Defs.' Mot. ¶ 3.) Plaintiff has requested some return on investment over the past fifteen years, including a request in a letter dated October 7, 2012, but no money has been paid to Plaintiff to date. (Id. ¶¶ 23, 25-26.)

## LEGAL STANDARD

In order for a federal court to have subject-matter jurisdiction, there must either be a federal question or diversity of citizenship. 28 U.S.C. §§ 1331-1332. For subject-matter jurisdiction to exist because of a federal question, a claim arising under federal law "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). For a federal court to have subject-matter jurisdiction on the basis of diversity of citizenship, the parties must be diverse, and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. Diversity is determined by considering the domicile of the parties in the suit, and domicile is defined as "the place one intends to remain" for individual persons. *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). For limited liability companies, citizenship is determined by looking at the owners of the LLC; an LLC is a citizen of every state where one of its owners is a citizen. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

A district court may have supplemental jurisdiction "over all other claims that are so related to claims in the cause of action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a). District courts assess whether supplemental jurisdiction exists by considering whether:

2

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A defendant may move to dismiss a claim for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of demonstrating the existence of jurisdiction over the defendant once jurisdiction has been challenged. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 2003). In Illinois, a federal district court has personal jurisdiction over a nonresident party only if an Illinois state court would have jurisdiction over that party. *Id.* at 1275 (citations omitted). In order for an out-of-state defendant to be sued in Illinois, two criteria must be met: (1) jurisdiction must be authorized by the Illinois long-arm statute, and (2) the defendant must have minimum contacts with Illinois significant enough that personal jurisdiction does not violate due process. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990).

In this instance, the Illinois long-arm statute extends to this case;[2] thus, the pertinent question is whether personal jurisdiction violates the Due Process Clause of the United States Constitution. 735 ILCS 5/2-209.

The Due Process Clause of the United States Constitution requires that an out-of-state defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

---

[2] The Illinois long-arm statute allows for jurisdiction over out-of-state defendants who transact any business in Illinois, or who form a contract or promise that is substantially connected with Illinois. 735 ILCS 5/2-209(a).

U.S. 310, 315 (1945) (internal quotation marks omitted). In order to establish specific jurisdiction, courts determine whether it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBid, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (citing *Int'l Shoe*, 326 U.S. at 317).

Venue must also be proper in order for a case to proceed. Proper venue is dictated by 28 U.S.C. § 1391, which provides: "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Even if venue is proper, "[f]or the convenience of parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The movant for transfer of venue bears the burden of establishing the transferee forum as clearly more convenient. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219, 220 (7th Cir. 1986). Determining whether a motion to transfer venue is proper is left to the discretion of the trial court. *Id.* at 219.

## ANALYSIS

### *Subject-Matter Jurisdiction*

District courts may only hear cases where jurisdiction exists; cases not properly in federal court are dismissed *sua sponte*. *See Joyce v. Joyce*, 975 F.2d 379, 380 (7th Cir. 1992). In this case, subject-matter jurisdiction exists because of the alleged violation of the RICO Act, a federal claim.[3] (Compl. ¶¶ 58-69.) Plaintiff did not explicitly state this jurisdictional basis in the Complaint. (Compl. ¶¶ 1-6.) However, alleging a RICO violation is sufficient to establish

---

[3] Defendants' reply raises for the first time that subject-matter jurisdiction does not exist for Quilter's Rule, as it is an LLC, which means it is a citizen of the same state as the plaintiff. (Defs.' Reply at 2.) However, this argument is moot, as there is subject-matter jurisdiction due to the RICO claim.

federal jurisdiction, as "the usual rule is that if a court has jurisdiction it must retain a case even if the parties have failed to identify the correct basis of the court's jurisdiction," which is precisely what happened here. *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1328 (7th Cir. 1995) (citations omitted). In this case, there is subject-matter jurisdiction under Section 1331 because there is a federal question. 28 U.S.C. § 1331.

*Supplemental Jurisdiction*

Having found subject-matter jurisdiction to be proper under Section 1331, supplemental jurisdiction is exercised over the five remaining state law claims. None of the state law claims "raises a novel or complex issue of State law." *See Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (citing 28 U.S.C. § 1367). Furthermore, none of the state law claims substantially predominates over the RICO claim. *Compare Palivos v. City of Chicago*, 901 F. Supp. 271, 273 (N.D. Ill. 1995) (concluding supplemental jurisdiction should not be exercised because the state law claims predominated over the federal claim asserted). Additionally, the federal claim has not been dismissed in this case. Finally, there are no additional "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). For these reasons, supplemental jurisdiction exists over the state law claims, as it is in the interest of justice to hear all six claims together.

*Motion to Dismiss for Lack of Personal Jurisdiction*

In order to grant a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), there must clearly not be either general or specific personal jurisdiction. *See GoDaddy*, 623 F.3d at 425.

## General Personal Jurisdiction

General jurisdiction does not exist in this case, because neither Defendants have the necessary minimum contacts to support general jurisdiction in Illinois. Defendants are engaged in the sale of quilting and sewing supplies, among other things, over the Internet. (Compl. ¶¶ 13-14.) It is possible that some sales occur in Illinois. However, this contact is insufficient to establish general personal jurisdiction, as there is no indication Defendants targeted Illinois to the point that their activities can be characterized as "continuous and systematic general business contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding that sending an executive to the State of Texas for contract negotiations was insufficient contact to afford general jurisdiction). In this case, the only contact Defendants have with Illinois is their sales in the state, and their interactions with the shareholders who live in the state, and those contacts are insufficient to establish general personal jurisdiction.

## Specific Personal Jurisdiction

Defendants argue the case should be dismissed for lack of specific personal jurisdiction. (Defs.' Mot. ¶¶ 1-11.) Plaintiff asserts specific personal jurisdiction exists because the agreement between the parties occurred in the State of Illinois, and Illinois law allows for personal jurisdiction under such circumstances. 735 ILCS 5/2-209(a); (Pl.'s Resp. ¶¶ 4-8). Plaintiff also relies on the Supreme Court's decision in *International Shoe* for the proposition that personal jurisdiction in this district does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (citation omitted); (Pl.'s Resp. ¶ 4). The standard for specific personal jurisdiction is whether it is fair and reasonable for the defendant to be called into court in the jurisdiction chosen. *See Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 474 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-299 (1980)).

In this case, there is personal jurisdiction over Defendants. The underlying event that supported the cause of action in this case was the agreement between Simons and Plaintiff, and that agreement took place in Wilmette, Illinois, in 1997. (Compl. ¶ 11.) This agreement led to Plaintiff investing $150,000.00 in Quilter's Rule. (Compl. ¶ 12.) The initial agreement and negotiation is sufficient action in Illinois to subject Defendants to jurisdiction in Illinois.

Under the Illinois Long Arm Statute, 735 ILCS 5/2-209, Illinois courts may properly have jurisdiction over an out-of-state defendant, even if there is only a single act of contact between the out-of-state defendant's agent and the resident plaintiff. 735 ILCS 5/2-209; *D.S. America (East) Inc. v. Elmendorf Grafica, Inc.*, 274 Ill. App. 3d 643, 650 (Ill. App. Ct. 1995) (citations omitted). Here, the negotiation was between Plaintiff and Simons himself, and not an agent of his or of Quilter's Rule, making the connection even more significant. *Compare D.S. America (East) Inc.*, 274 Ill. App. at 650 (citation omitted). Under the Illinois Long Arm Statute, Defendants have sufficient contacts with the State of Illinois for the exercise of personal jurisdiction not to "offend traditional notions of fair play and substantial justice," as the formation of the purported agreement between the parties occurred in Wilmette, Illinois. 735 ILCS 2-209(a)(7) (providing that the act of ". . . making or performance of any contract or promise substantially connected with [the State of Illinois]" establishes a submission to jurisdiction); *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks omitted). The purpose of the Illinois Long Arm Statute is to provide residents with recourse in the courts of the State of Illinois. The actions of Defendants in negotiating the investment by Plaintiff in Illinois are sufficient to subject Defendants to jurisdiction in the State of Illinois and, thereby, in this Court.

Plaintiff has established the existence of personal jurisdiction over Defendants. Thus, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied.

*Motion to Dismiss for Improper Venue*

Defendants also filed a Motion to Dismiss under 28 U.S.C. § 1391. Under Section 1391, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Defendants argue venue is improper because neither Defendant resides in Illinois, as Simons is a Wisconsin resident, and his business, Quilter's Rule, is a Wisconsin company. (Defs.' Mot. ¶¶ 14-15.) Defendants further assert that a substantial part of the events giving rise to the cause of action occurred in Wisconsin. (*Id.* ¶ 15.)

As previously discussed, specific personal jurisdiction has been established over Defendants, due to the fact that the contract negotiation between Simons and Keefe occurred in Wilmette, Illinois. The same analysis supporting that conclusion applies to venue. In the State of Illinois, it is sufficient, for purposes of venue, to have a single contact through an agent with an Illinois resident under the Illinois Long Arm Statute. *D.S. America (East) Inc.*, 274 Ill. App. at 650 (citation omitted). In this instance, Simons himself negotiated the investment from Keefe in Wilmette, Illinois, which is a "substantial part of the events . . . giving rise to the claim." 28 U.S.C. § 1391. Accordingly, venue is proper in the Northern District of Illinois, and the Motion to Dismiss for Improper Venue under 28 U.S.C. § 1391 is also denied.

*Motion to Transfer Venue*

Defendants finally argue, in the alternative to their Motion to Dismiss for Lack of Personal Jurisdiction and their Motion to Dismiss for Improper Venue, that even if venue is proper, the case should be transferred to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404. A party seeking to transfer venue must show the following: (1) venue is proper in the

alternative forum, (2) the alternative forum is more convenient for the parties and witnesses, and (3) the interest of justice is served by the transfer. 28 U.S.C. § 1404(a); *Coffey*, 796 F.2d at 219. The party seeking the transfer has the burden of proving that the transfer of venue is more convenient for the parties and in the interest of justice. *Id.*

### Venue in the Transferor and Transferee Courts

As previously discussed, venue is proper in the Northern District of Illinois. Defendants argue venue should be transferred to the Eastern District of Wisconsin. Venue must also be proper in the transferee venue, as 28 U.S.C. § 1404(a) provides a case can only be transferred to "any other district or division where [the suit] might have been brought or to any district or division to which all parties have consented." Plaintiff has not consented to the transfer of venue. However, the Eastern District of Wisconsin is also a proper venue, as 28 U.S.C. § 1391(b)(1) allows for venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," and both Defendants are residents of the State of Wisconsin. 28 U.S.C. § 1391(b)(1). Simons is domiciled in Wisconsin, as his permanent residence is in Burlington, Wisconsin. *See Dakuras*, 312 F.3d at 258. Quilter's Rule is a resident of Wisconsin, because, as a limited liability company, it is a resident of the states of its owners, and Simons owns 62.9% of the company. *Cosgrove*, 150 F.3d at 731. As both Defendants are Wisconsin residents, the Eastern District of Wisconsin is a proper venue under 28 U.S.C. § 1391(b)(1).

### Convenience of the Parties and Witnesses

Determining which venue is more convenient is at the discretion of the district court. *Coffey*, 796 F.2d at 219. To make this determination, courts consider five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to

9

sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (citations omitted).

Typically, courts give significant weight to the plaintiff's choice of forum, "particularly when it is also plaintiff's home forum," unless the choice lacks any significant connection to the cause of action. *Symons Corp. v. Southern Forming and Supply, Inc.*, 954 F. Supp 184, 186 (N.D. Ill. 1997). In this case, Plaintiff chose the Northern District of Illinois, which has a significant connection to the cause of action, as it arises out of the agreement that occurred in Wilmette, Illinois. The situs of material events certainly occurred in Illinois, as the agreement that led to the cause of action occurred in Wilmette, Illinois. The relative ease of access to sources of proof is not a dispositive factor, as the sources of proof are likely to be Simons, Keefe, and documents proffered by the parties.

Defendants summarily argue that the convenience of the parties weighs in favor of transferring venue, as most witnesses can be found in Wisconsin, including both individuals and companies. (Defs.' Mot. ¶ 18.) Defendants also argue Plaintiff can easily attend proceedings in the Eastern District of Wisconsin. (Defs.' Reply at 3.) Finally, Defendants argue the claims somehow arise under Wisconsin law, as Quilter's Rule is a Wisconsin company, and that, therefore, the case should be heard in Wisconsin. (Defs.' Reply at 3-4.)

Plaintiff contends that the convenience of the parties and witnesses weighs in favor of denying the transfer, as Plaintiff is eighty-two years old, and additional travel would be inconvenient for him, while Simons is a middle-aged man, who has not expressed any health issues involved with traveling to Chicago, Illinois. (Pl.'s Resp. ¶¶ 14-15.) Plaintiff also states the Eastern District of Wisconsin would not be significantly more convenient for witnesses, as Defendants contend, because the difference between coming to the Northern District of Illinois

and the Eastern District of Wisconsin, traveling from Burlington, Wisconsin, where Quilter's Rule is located, is negligible, and that, therefore, witnesses would not be overly inconvenienced by being required to travel to the current venue. (Pl.'s Resp. ¶¶ 15-16.)

Considering each of these factors, Defendants have not demonstrated that the convenience of the parties would not be better served by a transfer to the Eastern District of Wisconsin.

### The Interest of Justice

When considering whether to transfer a case, the interest of justice may be determinative, even if the convenience of the parties and witnesses does not indicate transfer is appropriate. *Coffey*, 796 F.2d at 220. The interest of justice encompasses several factors: (1) whether a speedy trial is more likely in the transferee forum, (2) whether the current action could be consolidated with other actions in the transferee forum, (3) whether jurors in a particular forum have a financial interest in the case, and (4) where a jury could best apply community standards. *Id.* at 220-21, 221 n.4. The focus of the district court when assessing these factors is the "efficient functioning of the courts." *Id.* at 221.

Defendants do not assert that consolidation of other actions pending in the Eastern District of Wisconsin would be achieved through the transfer of venue. Additionally, there is no showing by either party, or any indication that a jury in either district would have a financial interest in the case, or could better apply community standards. This leaves only the speedy trial

factor, which does not weigh more heavily in favor of one district over the other.[4] On a whole, the interest of justice would not be better served by granting Defendants' Motion to Transfer Venue. Hence, the Motion for Transfer of Venue is denied.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is denied. Additionally, Defendants' Motion to Dismiss for Improper Venue under 28 U.S.C. § 1391 is denied. Finally, Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404 is denied.

Date: June 25, 2013

JOHN W. DARRAH
United States District Court Judge

---

[4] Neither party cited to the dockets of the Northern District of Illinois and the Eastern District of Wisconsin, but the Department of the Judiciary publishes such statistics. The median time to trial in the Northern District of Illinois is 28.9 months and 30.9 months in the Eastern District of Wisconsin. *U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated*, Uscourts.gov, http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf (last visited May 29, 2013).